**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| TIPHONY MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | |
| | ) | |
| TIDAL WAVE RESPONSE, LLC and | ) | |
| JOHN MYERS | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

**PRELIMINARY STATEMENT AND INTRODUCTION**

1.     Plaintiff Tiphony Marshall ("Plaintiff" or "Mrs. Marshall") faithfully served as an employee of the Tidal Wave Response, LLC ("Tidal Wave") for more than three and one-half years until her unlawful constructive discharge on August 6, 2021.

2.     Despite Mrs. Marshall's commitment and service to Tidal Wave, her supervisor, Defendant John Myers, who is also the owner of Tidal Wave, repeatedly subjected her to abhorrent sexual and racial harassment in the workplace, created a sexually and racially hostile work environment, and ultimately engaged in a physically threatening act of violence that was intended to and did make Mrs.

Marshall fear for her safety, thereby constructively discharging her from her employment because of her sex and race.

3.      This is an action for Defendants' violations of Mrs. Marshall's right to be free from racial discrimination in the workplace under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

4.      Mrs. Marshall seeks back pay and the lost economic benefits of her employment, front pay in lieu of reinstatement, compensatory and punitive damages, reasonable attorney's fees and costs of litigation, and all other relief this Court may deem just.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Mrs. Marshall has begun the process of satisfying all administrative prerequisites to perfect additional claims of race and sex discrimination and retaliation under Title VII. Specifically, she has timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"); however, she has not yet received her Notice of Right to Sue Letter for her claims under Title VII of the Civil Rights Act of 1964 as amended. Upon receipt of such a letter, Mrs. Marshall intends to amend her complaint to add such Title VII claims as are appropriate.

## JURISDICTION AND VENUE

6.      Plaintiff's claims present federal questions over which this Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1343 (a).

7.      Venue is proper in this Court because: Defendant Myers resides in Brookhaven, DeKalb County, Georgia, within this district; Defendant Tidal Wave resides in Chamblee, DeKalb County, Georgia, within this district; and the events giving rise to this action occurred in DeKalb County, Georgia, within this district. *See* 28 U.S.C. § 1391(b)(1).

## PARTIES

8.       Plaintiff Marshall is a citizen of the United States and an adult resident of the state of Georgia. Plaintiff Marshall resides in Clayton County and was at all times relevant to this Complaint an employee of Defendant Tidal Wave. Mrs. Marshall is an African-American female.

9.      Defendant Tidal Wave Response, LLC is a Georgia limited liability company with its principal address at 3924 Green Industrial Way, Chamblee, Georgia 30341. Defendant Tidal Wave may be served through its registered agent, United States Corporation Agents, Inc., located at 1420 Southlake Plaza Drive, Morrow, Georgia, 30260.

10.     Defendant John Myers is a resident of the state of Georgia and is subject to this Court's jurisdiction. He may be served with process via personal service at 2509 Appalachee Drive, N.E., Atlanta, DeKalb County, Georgia.

11.     Defendant Myers is a Caucasian/white male and was at all relevant times the owner of Defendant Tidal Wave and Plaintiff's direct supervisor.

## FACTUAL ALLEGATIONS

12.     Plaintiff began working for Tidal Wave on or about February 1, 2018. She was initially employed as an office assistant.

13.     After a few weeks, Plaintiff was promoted to the position of Office Manager. As Office Manager, she was one of the highest-ranking employees at Tidal Wave and was supervised by and reported directly to Defendant Myers.

14.     Within a few days after promoting Mrs. Marshall to Office Manager, Myers began subjecting her to a series of sexually and racially harassing and discriminatory comments that continued until her employment ended.

15.     Throughout Mrs. Marshall's employment as Office Manger, Myers made sexually harassing and/or racist statements or engaged in harassing conduct on a near-daily basis (at least once every two-to-three days). These comments were made both about Mrs. Marshall in front of other employees and directly to Mrs. Marshall about other employees, customers, and job candidates. The examples of

Myers' misconduct are numerous, but several examples are provided in the following paragraphs.

16.     Myers repeatedly asked Plaintiff about her sex life and suggested that she was sleeping with a male co-worker, Desmond Signs, because they sometimes took lunch breaks together. Plaintiff told Myers that she is married, that his questions were not appropriate, and that she was not comfortable with his behavior. Myers ignored her complaints, and his questions and remarks continued. Myers also asked Mr. Signs if he was "hittin' that" and "are you guys screwing" in reference to Mrs. Marshall. This misconduct began in early 2021 and continued until early July 2021, when Signs' employment was terminated.

17.     In addition, Myers frequently made inappropriate sexual remarks about other women in Mrs. Marshall's presence.

18.     In her role as Office Manger, Mrs. Marshall was responsible for completing Tidal Wave's hiring process. After Plaintiff interacted with female job candidates, Myers frequently asked her if the job candidates were "hot," what they looked like, or how big their breasts were. Additionally, when he saw female candidates who he apparently believed to be attractive, Myers would frequently comment to Plaintiff "hey, did you see how hot she was?," or use words to that effect, and make a "boing" sound, suggesting that he was having an erection.

19.     Myers' misbehavior regarding job candidates also extended to potential male hires. When potential male hires came into the office, Myers would introduce them to Plaintiff by saying "This is Tiphony. She's single and ready to mingle. You can get with her" or similar words to that effect. Mrs. Marshall repeatedly told Myers that she is married, not single, and that she was uncomfortable with him making such comments. She repeatedly asked Myers to stop, but he ignored her complaints and continued making such comments.

20.     Myers also repeatedly made inappropriate comments about Mrs. Marshall's body and clothing; in particular, he frequently commented about her backside if she was wearing spandex. Myers made comments about Mrs. Marshall's body both to her and to others in her presence.

21.     On one occasion, Myers told her "Hey, Tiphony, he's looking at your ass," regarding a plumber who was working nearby.

22.     On another occasion, Myers was in the office berating several employees for leaving a door unlocked overnight. As Mrs. Marshall walked into the building, returning from making a bank deposit, Myers told the employees that someone had come in through the unlocked door that morning and raped Mrs. Marshall. While this was not true, it was terribly embarrassing for her. Mrs. Marshall's brother was among the group of people that was told she had been raped,

and he heard the comment. Afterward, Mrs. Marshall and her brother had to field questions from their co-workers about whether she was, in fact, raped and whether she was okay, which just made the already uncomfortable situation worse.

23.   Myers also repeatedly made inappropriate sexual comments and implications about his penis.

24.   On multiple occasions, he rubbed one or more $100 bills on his crotch, then tried to hand them to Mrs. Marshall and other employees to pay their commissions.

25.   Myers also repeatedly went to the restroom in Tidal Wave's small office space with the door open and yelled out to Mrs. Marshall and one of her female coworkers, Erikka Bolding, who is of Black, Latino, and/or Hispanic descent, asking that they come help hold his penis while he urinated. When this occurred, Myers said things like "come in and help me hold it" or "Tiphony! Erikka! I need your help with this!"

26.   On other occasions, Myers came out of the restroom with his pants unbuckled in front of Mrs. Marshall, then laughed about his pants being unbuckled and open.

27.     Mrs. Marshall repeatedly told Myers that his sexual misconduct was out of line and unacceptable. However, he simply laughed it off, ignored her complaints, and continued engaging in similar sexually harassing conduct.

28.     At one point, Mrs. Marshall threatened to report Myers' abuse to the government if he did not stop. Myers responded by attempting to intimidate her, stating that he kept a lawyer on retainer, who he paid $10,000 per month, so he was not worried about her threat to report him. Afterward, his abusive conduct continued.

29.     Myers also repeatedly made racist comments about Mrs. Marshall, minorities, generally, and Mrs. Marshall's grandson, who is a minor child.

30.     On one occasion, Myers told several of Tidal Wave's Black and Hispanic employees that he was "better than" them. He also told them that they would never get anything better than working for him. Myers made these comments in front of Mrs. Marshall.

31.     On another occasion, Myers asked Mrs. Marshall how he should address her, asking "Do I call you Black? Do I call you African American? Do I say 'yo, what's up?"

32.     On yet another occasion, after seeing a photograph of Mrs. Marshall's grandson (who is Black and has long braids) on her computer screensaver, Myers asked her "who is this, yo yo whassup?" To make matters worse, when making this

already inappropriate remark, Myers attempted to emulate stereotypical African-American vernacular during this exchange.

33.     Also, on multiple occasions, when Myers came into the office, he loudly said to Mrs. Marshall or in her presence "what's up my ni…," stopping just shy of using the words "nigga" or "nigger." When Mrs. Marshall told him that this was completely unacceptable, Myers did not so much as apologize. Instead, he claimed that another Black employee, Pervis Parham, let Myers speak to him that way.

34.     Myers also repeatedly forced Mrs. Marshall to watch his infant child, for hours on end, while she was at work, which had nothing whatsoever to do with her job duties. This interfered with her ability to complete her actual job duties and was, apparently, forced upon her because she is a Black woman who has raised several children.

35.     Myers refused to even change his own child's dirty diapers, instead forcing Mrs. Marshall to complete this task. When she asked him to change the child's dirty diaper, Myers responded, "I do not change diapers," and implied that changing diapers was not his job, as a man, but was a suitable task for a woman.

36.     In early July 2021, one of Tidal Wave's male project managers, Desmond Signs, was terminated. When Mr. Signs was terminated, Tidal Wave did

not hire another person to fill his roll. Instead, Mrs. Marshall was required to complete both her prior duties as Office Manager and take on the additional duties of the project manager. Despite this significant change in her job duties, she was given no raise.

37.     None of Mrs. Marshall's white coworkers or male coworkers were required to work in multiple positions without receiving a commensurate increase in pay.

38.     After enduring the additional work duties for several weeks, Mrs. Marshall asked Myers whether he would either give her a raise or hire a new project manager. Each time Mrs. Marshall asked, Myers avoided her and refused to discuss the issue, claiming he was too busy and did not have time but would get back to her.

39.     On August 4, 2021, Mrs. Marshall attempted to have this conversation with Myers face-to-face in his office. When she attempted to raise the subject, Myers became enraged, started shouting profanities, and threw a cup of hot coffee near her. The cup hit the wall of his office, splattering everywhere.

40.     When Mrs. Marshall looked at where the cup had landed, Myers yelled at her "don't look at the fucking wall!"

41.     Myers then berated Mrs. Marshall and yelled more profanities.

42.     During this exchange, Mrs. Marshall feared for her safety and thought that Myers might attempt to strike her because of Myers' behavior at the time and because she had previously seen Myers become similarly enraged and punch holes in the walls of the office or get in the faces of other employees and threaten to beat them up.

43.     After the August 4, 2021 incident, Mrs. Marshall fled the office because she was afraid for her safety.

44.     Because Myers, the owner of Tidal Wave and Mrs. Marshall's direct supervisor, refused to correct his ongoing abusive and discriminatory conduct, Mrs. Marshall was forced to resign because the work environment was intolerable. That is, she was constructively discharged from her employment with Tidal Wave.

45.     Mrs. Marshall tendered her resignation, effective immediately, on August 6, 2021, because of Myers' pattern of misconduct throughout her employment and because of Myers' behavior during the August 4, 2021 incident.

46.     Throughout Mrs. Marshall's employment with Tidal Wave, a white woman, Mary "Suzanne" Collins, was similarly situated to Mrs. Marshall in all material respects.

47.     Ms. Collins was charged with managing Tidal Wave's bookkeeping and financial information, and she had rank and authority similar to Plaintiff's rank

and authority. Like Plaintiff, Ms. Collins reported directly to and was directly supervised by Myers. In addition, all workplace conduct policies that were applicable to Plaintiff were also applicable to Ms. Collins.

48.     However, unlike his behavior toward Plaintiff, Myers did not subject Ms. Collins to:

    a.  Comments about her body;

    b.  Comments about the bodies of other women;

    c.  Suggestions that Ms. Collins was "single and ready to mingle" or otherwise available as a sexual conquest;

    d.  Comments about his penis;

    e.  Attempts to give her money that he had rubbed on his crotch;

    f.  Assertions to other persons about her body or that she had been raped;

    g.   Comments that he was "better than" her or that she could not do better than working for him;

    h.  Conspicuous racial epithets to describe her;

    i.  Race-based statements about her and her family members;

    j.  Requirements that she babysit his child;

    k.  Requirement that she handle the responsibilities of multiple job roles without a commensurate increase in pay; or

l.   Verbally or physical threatening behavior.

## CAUSES OF ACTION

### COUNT ONE
### 42 U.S.C. § 1981 – Race Discrimination
### *Against all Defendants*

49.     All preceding paragraphs are hereby incorporated as though each of the factual allegations is restated.

50.     At all times material to this Complaint, Plaintiff and Defendants were parties to an employment agreement under which Plaintiff worked for Defendants and Defendants compensated Plaintiff for her work.

51.     Plaintiff performed her obligations under her employment agreement.

52.     42 U.S.C. § 1981 prohibits Defendants from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of their employment agreement with Plaintiff.

53.     The above-pled discriminatory conduct toward Plaintiff, including, but not limited to, Defendants' discriminatory constructive discharge of Plaintiff based on race constitute unlawful race discrimination against Plaintiff in the terms and conditions of her employment in violation of 42 U.S.C. § 1981.

54.     Defendants violated Plaintiff's rights under 42 U.S.C. § 1981 by terminating her employment because of her race.

55.     Defendant Myers violated Mrs. Marshall's right to be free from race discrimination in employment by directly participating in Defendant Tidal Wave's discriminatory actions by subjecting Mrs. Marshall to disparate treatment in a manner that adversely affected the terms and conditions of her employment.

56.     Defendant Myers violated Mrs. Marshall's right to be free from race discrimination in employment, because he personally participated in and knowingly caused each of the violations of Mrs. Marshall's rights as described herein.

57.     Defendant Myers violated Mrs. Marshall's right to be free from race discrimination in employment, because he, as owner of Tidal Wave and as Mrs. Marshall's immediate supervisor, was in a position of authority to take responsive action to stop the violations of Mrs. Marshall's rights as described herein, and he knew about the violations of Mrs. Marshall's rights, yet he failed to act, thereby acquiescing to the discriminatory conduct and causing the discrimination against Mrs. Marshall to persist and worsen.  Defendant Myers' failure to act in the face of known violations of Mrs. Marshall's rights amounted to deliberate indifference.

58.     Defendant Myers violated Mrs. Marshall's right to be free from race discrimination in employment by subjecting her to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included subjecting her to comments about her body, comments about her sex life, sexual

comments and implications about his penis, suggestion to other employees that she had been raped, openly and repeatedly using racially offensive language toward her, using racially offensive language with respect to her grandson, forcing her to watch his infant child and change the child's diapers in the workplace, refusing to provide her with a commensurate pay increase when forcing her to perform both her job as office manager and the job of project manager following the termination of Mr. Signs' employment, and yelling at her, cursing at her, and engaging in violent physically threatening behavior toward her when she requested that he either give her a raise or hire another project manager.

59.     Defendant Myers violated Mrs. Marshall's right to be free from race discrimination in employment by terminating her employment because of race.

60.     Defendant Myers undertook his conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook his conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant Myers.

61.     Defendant Myers' conduct described above has directly and proximately caused, and continues to cause, Plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future

income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

62.     Defendants' interference with Plaintiff's ability to execute her job duties violated Plaintiff's rights under § 1981 because of her statutory right to equal benefits of laws and proceedings as well as her contract-based employment right to be free from race discrimination. Defendants' final decision-making role in Plaintiff's constructive discharge/termination gives rise to Defendants' liability under § 1981.

63.     Plaintiff's race was a "motivating factor" in Defendants' treatment of Plaintiff and in Defendants' decision to constructively terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

64.     As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

65.     Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the below prayer for relief against Defendant Tidal Wave and against Defendant Myers for their violations of her rights under 42 U.S.C. § 1981.

**COUNT TWO**
**Retaliation – Retaliatory Harassment, Retaliation in the Terms and**
**Conditions of Employment, and Retaliatory Termination in Violation of 42**
**U.S.C. § 1981**
*Against all Defendants*

66.     All preceding paragraphs are hereby incorporated as though each of the

factual allegations is restated.


67.     Plaintiff and Defendants were parties to an employment agreement

under which, inter alia, Plaintiff worked for Defendants and Plaintiff was

compensated for her work.

68.     Plaintiff performed her contractual obligations.

69.     Plaintiff is an African-American citizen who engaged in statutorily

protected activity by objecting to and complaining against sexual and racial

discrimination prohibited by 42 U.S.C. § 1981 and Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

70.     42 U.S.C. § 1981 prohibits the Defendants from retaliating against

Plaintiff because she opposed, objected to, and complained against race

discrimination prohibited by 42 U.S.C. § 1981 and Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

71.     During Plaintiff's employment with Tidal Wave, Defendants subjected her to retaliation because she opposed, objected to, and complained against illegal race discrimination. Defendants retaliated against Plaintiff by taking various retaliatory actions against her including, but not limited to: (a) forcing her to care for Mr. Myers' child without compensation, in addition to performing her usual job duties; (b) continuing to subject her to sexually and racially discriminatory and harassing comments; (c) foisting Mr. Signs' job duties upon her, in addition to her duties as office manager, without providing her  a commensurate increase in pay; (d) yelling and cursing at Plaintiff and subjecting her to physically threatening behavior; and (e) constructively discharging Plaintiff from her employment on the basis of her exercise of federally protected rights as compared with employees who did not engage in similar statutorily protected activity.

72.     The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in violation of 42 U.S.C. § 1981.

73.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

74.     Defendants undertook their conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights,  and  undertook their conduct

recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover compensatory and punitive damages against them.

75.     Defendants' actions were willful, wanton, and intentionally directed to harm Plaintiff.

76.     Defendants' actions were reckless and were taken in willful disregard of the probable consequences of their actions.

77.     Pursuant to 42 U.S.C. § 1981, Plaintiff is entitled to damages against Defendants, including back pay and lost benefits, compensatory damages, punitive damages, attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

**COUNT THREE**
**Punitive Damages Under 42 U.S.C. §1981**
***Against all Defendants***

78.     All preceding paragraphs are hereby incorporated as though each of the factual allegations is restated.

79.     The aforementioned actions of Defendants were taken in clear violation of federal statutory law.

80.     Defendants acted in reckless disregard for Plaintiff's rights under 42 U.S.C. §1981.

81.    Because of Defendants' conduct, Plaintiff is entitled to punitive damages against them.

82.    Defendants' discriminatory actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences. Accordingly, Plaintiff is entitled to punitive damages against them.

## PRAYER FOR RELIEF

WHEREFORE, Mrs. Marshall demands a TRIAL BY JURY and the following relief:

(a)    declare that Defendants have violated Plaintiff's rights under the federal statutes listed above;

(b)    permanently enjoin Defendants from violating, in the future, Plaintiff's rights under any of the federal statutes listed above;

(c)    award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(d)    award Plaintiff prejudgment interest as required by law;

(e)    award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(f)     award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(g)     award Plaintiff punitive damages, against Defendants Tidal Wave and Myers sufficient to punish them for their unlawful conduct and deter them from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(h)     award Plaintiff reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988; and

(i)     grant such additional relief as may be just.

Respectfully submitted this 20th day of December, 2021.

**BUCKLEY BEAL, LLP**

*/s/ Edward D. Buckley*
Edward D. Buckley
GA Bar No. 092750
edbuckley@buckleybeal.com
J. Kyle Brooks
GA Bar No. 773561
kbrooks@buckleybeal.com

600 Peachtree Street NE
Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101