## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TIPHONY MARSHALL,

    Plaintiff,

                v.

TIDAL WAVE RESPONSE, LLC and JOHN MYERS,

    Defendant.

Civil Action No.
1:21-cv-05186-SDG

### <u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiff Tiphony Marshall's Motion for Default Judgment [ECF 7] against Defendants Tidal Wave Response, LLC (Tidal Wave) and John Myers (collectively, Defendants). For the following reasons, the motion is **GRANTED IN PART and DENIED IN PART.**

### I.  Background[1]

Marshall began working at Tidal Wave on or around February 1, 2018.[2] Shortly thereafter, she was promoted to office manager and began reporting to Myers, Tidal Wave's owner and sole member.[3] Beginning in early 2021, Myers

---

[1]  The following well-pled facts are deemed admitted for purposes of this Order. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (citation omitted).

[2]  ECF 1, ¶ 12.

[3]  *Id.* ¶ 13.

allegedly subjected Marshall to appalling and harassing conduct on a near-daily basis.[4]

Much of Myers's alleged conduct toward Marshall could be described as generally abusive and misogynistic. For example, Myers brought his infant child to the office and forced Marshall to watch the child and change the child's diapers, implying that this was a task suited for a woman, not a man.[5] Then, in early July 2021, one of Tidal Wave's male project managers was terminated.[6] Tidal Wave did not hire another person to fill his role; rather, Marshall was required to complete the duties of her job as office manager and the duties of a project manager without additional pay.[7] Marshall confronted Myers about her extra uncompensated responsibilities multiple times.[8] Finally, on August 4, 2021, Marshall attempted to raise the issue in Myers's office.[9] Myers allegedly became irate, shouted

---

[4]   *Id.* ¶¶ 14–16.

[5]   *Id.* ¶ 34.

[6]   *Id.* ¶ 36.

[7]   *Id.*

[8]   *Id.* ¶ 38.

[9]   *Id.*

profanities, and threw a cup of hot coffee near her.[10] Faced with the risk of physical violence, Marshall feared for her safety and fled the office.[11]

The following is only a smattering of Myers's alleged sexual misconduct toward Marshall. Myers repeatedly asked Marshall about her sex life and suggested that she was sleeping with a male co-worker.[12] When Myers interviewed a female candidate for a position at Tidal Wave, he would ask Marshall if she thought the candidate was "hot," what the candidate looked like, or the size of the candidate's breasts.[13] From time to time, following an interview of a female candidate, Meyers made sexually charged noises in front of Marshall and suggested that he was sexually aroused.[14] When he interviewed male candidates, Myers would occasionally suggest to them that they could "get with" Marshall.[15] Myers made inappropriate comments about Marshall's physical appearance; if she was wearing form-fitting clothing, Myers would comment

---

[10]  *Id.*

[11]  *Id.* ¶¶ 39–43.

[12]  *Id.* ¶ 16.

[13]  *Id.* ¶¶ 17–18.

[14]  *Id.* ¶ 18.

[15]  *Id.* ¶ 19.

about her body.[16] Myers told an audience of Tidal Wave employees that Marshall had been raped, which was not true.[17] Myers attempted to pay Marshall commissions with one-hundred dollar bills, which he rubbed on his crotch.[18] On multiple occasions, Myers offered unsolicited comments about his penis, shouted from the bathroom for Marshall to "come and help [ ] hold it" while he urinated, and exited the bathroom in front of Marshall with his pants unbuckled.[19]

Myers also allegedly made a number of racially charged, degrading comments to and around Marshall about Marshall who is Black, her grandson who is Black, and minority groups generally.[20] In front of Marshall, Myers told a group of Black and Hispanic employees that he was "better than" them, and that they would never "get anything better" than working for him.[21] He mocked and imitated his idea of Vernacular Black English, and asked Marshall, "Do I call you Black? Do I call you African American? Do I say 'yo, what's up?'"[22] On multiple

---

[16]   *Id.* ¶ 20.

[17]   *Id.* ¶ 22.

[18]   *Id.* ¶ 24.

[19]   *Id.* ¶¶ 23, 25–26.

[20]   *Id.* ¶ 29.

[21]   *Id.* ¶ 31.

[22]   *Id.* ¶¶ 31–32.

occasions, Myers would skirt around the use of derogatory racial slurs, stopping just before he completely uttered them.[23] Marshall told Myers that this behavior was unacceptable.[24] Myers retorted that another Black employee allowed him to behave this way.[25]

Importantly, a White female who worked as Tidal Wave's bookkeeper and had a similar rank and authority to Marshall was never subjected to any treatment like that described above.[26] As a result of Myers's behavior—especially the August 4 coffee-throwing incident—and because Marshall had previously seen Myers become enraged, punch holes in the walls of his office, and threaten to beat up employees, Marshall resigned on August 6, 2021.[27]

On December 20, 2021, Marshall filed the Complaint, alleging theories of disparate treatment and hostile work environment under Section 1981 and retaliation under Section 1981 and Title VII.[28] Shortly thereafter, Marshall properly

---

23   *Id.* ¶ 33.

24   *Id.*

25   *Id.*

26   *Id.* ¶¶ 46–48.

27   *Id.* ¶¶ 42–43, 45.

28   *See generally Id.*

served Defendants,[29] who have neither answered nor otherwise appeared in this action. At the time she initiated this case, Marshall had not exhausted her administrative remedies as required to perfect sex and race discrimination and retaliation claims under Title VII.[30] When she moved for default judgment on March 25, 2022, Marshall indicated that she had timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) in order to exhaust administrative remedies for her Title VII claim, and that she intended to file a supplemental pleading upon receipt of a Notice of Right to Sue from the EEOC.[31] As of the date of entry of this Order, no supplemental complaint or proof that Marshall exhausted her administrative remedies has been filed with this Court.

## II.    Default Judgment

"[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Therefore, when considering a motion for default judgment, a

---

29    ECF 4; ECF 5.

30    ECF 1, ¶ 5.

31    ECF 7-1, at 9.

court must investigate the legal sufficiency of the allegations and ensure the complaint states a plausible claim for relief. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) ("Conceptually . . . a motion for default judgment is like a reverse motion to dismiss for failure to state a claim."). Ultimately, an entry of a default judgment is committed to the discretion of the district court. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985).

###    A.    Marshall Is Not Entitled to Default Judgment on Her Title VII Claim.

As a preliminary matter, Marshall's motion suggests that she has multiple claims arising under Title VII. However, in the Complaint's introduction, Marshall asserts that "[t]his is an action for Defendants' violations of [her] right to be free from racial discrimination from the workplace under the Civil Rights Act of 1866, 42 U.S.C. § 1981."[32] Marshall only mentions Title VII under Count II, which is titled "Retaliatory Harassment, Retaliation in the Terms and Conditions of Employment, and Retaliatory Termination in Violation of 42 U.S.C. § 1981."[33] In this sense, the Complaint is a shotgun pleading. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (citations omitted)

---

[32]    ECF 1, ¶ 3.

[33]    *Id.* at 17.

(A complaint that does "not separate[e] into a different count each cause of action or claim for relief" is an impermissible shotgun pleading).

Even if the Complaint had correctly pleaded multiple claims arising under Title VII, none of them would be viable. In the Eleventh Circuit, administrative exhaustion is a jurisdictional prerequisite to a Title VII action. *Bloodworth v. Colvin*, 17 F. Supp. 3d 1245, 1250 (N.D. Ga. 2014) (citing *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999)). Despite promises that she would, Marshall has not supplemented her motion for default judgment with any proof that she exhausted her administrative remedies before the EEOC. Because compliance with the EEOC's procedural regulations is a condition precedent to the Court's subject matter jurisdiction over Marshall's purported Title VII claims, such claims cannot proceed and Marshall is not entitled to a default judgment on them. As currently stated, Marshall's Complaint only puts forward claims for violations of Section 1981.

**B.    Marshall Is Entitled to Partial Default Judgment on Her Section 1981 Claims.**

     **1.    Liability**

        *i.*    **Marshall States Claims for Race-Based Disparate Treatment,  Retaliation, and Hostile Work Environment Under Section 1981.**[34]

Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975). Typically, the *McDonnell Douglas* burden-shifting framework is applied to evaluate Section 1981 claims based on circumstantial evidence. *Hill v. SunTrust Bank*, 720 F. App'x 602, 604 (11th Cir. 2018). However, *McDonnell Douglas* is "an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). Thus, for the purposes of default judgment, the plaintiff need only allege "enough factual matter (taken as true) to suggest intentional race discrimination" or retaliation. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[34]    While Marshall fails to state a Title VII claim, the Court notes that in this Circuit claims for race-based disparate treatment and retaliation under Title VII and Section 1981 are analyzed under the same case law and framework. So, should Marshall choose to cure the deficiencies in the Complaint, the foregoing analysis would apply to any Title VII claim she might properly assert. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

As far as Marshall's Section 1981 theories are concerned, the Court queries whether some of Myers's generally abusive conduct—*e.g.*, that he forced Marshall to care for his infant child—was a result of Marshall's race, as opposed to Myers's apparent propensity to act as a misogynist. Nevertheless, the record is replete with factual allegations that make out a *prima facie* case of race-based disparate treatment, retaliation, and hostile work environment.

### *a.*   Disparate Treatment

To establish a *prima facie* case of race discrimination under Section 1981, a plaintiff must allege sufficient facts to show that (1) she is a member of a racial minority; (2) the defendant intended to discriminate against her on that basis; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (citation omitted).

The first and third elements are easily met. Marshall is Black[35] and entered into an employment contract with Tidal Wave that is covered by Section 1981.[36] She also identifies a White co-worker who was similarly situated to her in all material respects, including that they shared a similar level of responsibility at

---

[35]   ECF 1, ¶ 8.

[36]   *Id.* ¶ 62.

Tidal Wave, both reported to Myers, and were bound by the same workplace policies.[37] The White co-worker was not subjected to any of Myers's behavior that Marshall suffered.[38]

As for the second element, the Court need not reproduce the extensive record of race-related abuses Marshall experienced at Myers's hand. She satisfied her burden at default judgment by merely alleging that Myers intimated at racial slurs, as it is well settled in this Circuit that the use of racial slurs is direct evidence of a defendant's discriminatory intent. *Kinnon*, 490 F.3d at 891. *See also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189–90 (11th Cir. 1997) (collecting Eleventh Circuit cases in which racial slurs were held to constitute direct evidence of discriminatory intent).

### *b.*     **Retaliation and Constructive Discharge**

Marshall also pled facts showing that she was subjected to a retaliatory constructive discharge. To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Shannon v. Nat'l R.R. Passenger Corp.*, 774 F. App'x. 529, 542

---

37   *Id.* ¶¶ 46–48.

38   *Id.*

(11th Cir. 2019) (citing *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010)).

Regarding the first element, "[a]n employee . . . engages in protected activity under Section 1981 if [s]he has opposed an employment practice based on a good faith, reasonable belief that the employment practice violated Title VII or Section 1981." *Canty v. Fry's Elecs., Inc.*, 2012 WL 1038619, at *9 (N.D. Ga. Feb. 2, 2012) (collecting Eleventh Circuit opinions). Marshall spoke up early and often regarding Myers's behavior. Specifically, Marshall reproached Myers for his "completely unacceptable" use of racial epithets, to which Myers responded that he used this language with another Black employee.[39] Also, beginning in July 2021 when Myers assigned her the responsibilities of a project manager without additional pay, Marshall complained and asked Myers to hire a new project manager or give her a raise.[40] Eventually, Myers violently lashed out.[41]

With respect to the second element, the "protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).

---

[39] *Id.* ¶ 33.

[40] *Id.* ¶¶ 36–39.

[41] *Id.* ¶¶ 39–42.

Such adverse actions include alterations in the employee's "compensation, terms, conditions, or privileges of employment." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). Here, Marshall alleges she was given additional unpaid responsibilities *and* constructively discharged from Tidal Wave because of Myers's conduct. "A constructive discharge occurs when a discriminatory employer imposes working conditions that are so intolerable that a reasonable person in the employee's position would have been compelled to resign." *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (cleaned up). The Complaint demonstrates that Marshall told Myers his behavior was unacceptable early on, giving Defendants time to remedy the situation before Marshall left her job. *See Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987). Considering that, after she complained, Marshall was subjected to racial epithets, required to perform the tasks of two employees without additional compensation, and eventually verbally berated and subjected to the risk of physical danger, the Court concludes that Marshall plausibly alleged she was constructively discharged from Tidal Wave.

Finally, the law of this Circuit "construes the causal connection element broadly, requiring a plaintiff to prove only that 'the protected activity and the negative employment action are not completely unrelated.'" *Shannon*, 774 F. App'x

at 542–43 (quoting *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1260 (11th Cir. 2012)). It is important, however, that "the decisionmaker was aware of the plaintiff's protected conduct at the time of the materially adverse action." *Id.* at 543 (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008)). The Complaint abounds with allegations admitted by virtue of Defendants' default that establish their direct knowledge of Marshall's protected conduct before Myers engaged in some of the discriminatory activity. Therefore, it is plausible that Myers's subsequent discriminatory conduct and Marshall's constructive discharge were causally related to her earlier protected activity. Given the allegations in the Complaint, the Court is satisfied that they are causally related. Accordingly, Marshall is entitled to default judgment on her Section 1981 retaliation theory.

### c.   Hostile Work Environment

The Complaint also suggests that Defendants subjected Marshall to a hostile work environment. Based on the same admitted allegations that establish the validity of her claims for discrimination and retaliation under Section 1981, Marshall sufficiently pleads a *prima facie* hostile work environment claim: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment was sufficiently severe or pervasive as to alter the terms and conditions of her employment, resulting in

additional unpaid responsibilities and, as detailed above, her constructive discharge; and (5) Tidal Wave is either directly or vicariously responsible because Myers is Tidal Wave's sole owner and member. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The facts as admitted by Defendants' default show that Tidal Wave was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter [Marshall's] employment and create an abusive work environment," by both subjective and objective measures. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). *See also Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (citing *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999) ("An employee's complaint about discrimination constitutes protected activity if the employee could 'reasonably form a good faith belief that the alleged discrimination existed.'"); *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (noting that the plaintiff's belief must also be "objectively reasonable in light of the facts and record presented")).

### *ii.* **Marshall Cannot State a Section 1981 Claim Based on Sex Discrimination.**

A grotesque account of Myers's sexually harassing conduct toward Marshall pervades the Complaint. That said, the pleading does not support a sex-discrimination claim under Section 1981. To the extent the Complaint may be read

to include a Section 1981 cause of action based on sex, such claims are not viable because Section 1981 addresses only race. *McCoy v. Johnson Controls World Servs.*, 878 F. Supp. 229, 232–33 (S.D. Ga. 1995) (citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976) ("It is well established that sexual harassment is not actionable under 42 U.S.C. § 1981.")). However relevant Myers's sexually harassing conduct might be to a Title VII claim, the facts Marshall pleads in this regard are legally immaterial to Marshall's race-based disparate treatment, retaliation, and hostile work environment theories under Section 1981, which are the only claims before the Court. *See Little*, 103 F.3d at 960–61 (Section 1981 was enacted to prevent discrimination based on race, not sex).

### iii.   Defendants Are Jointly Liable Under Section 1981.

Under these facts, both Defendants are liable under Section 1981 for race discrimination. It is black letter law that an employer is liable for the hostile environment if the supervisor takes a tangible adverse employment action against the victim, and the employer had actual or constructive notice of the action. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). Here, taking the alleged facts as true there is no question that Marshall was constructively discharged, which is an adverse employment action. Myers is also the sole member and owner of Tidal

Wave,[42] so the Court is satisfied that Tidal Wave had actual notice of Myers's harassing conduct such that Tidal Wave is liable for it. *Id.* Tidal Wave's direct liability is established.

As for Myers's liability, the analysis is more complex. By comparison, personal capacity suits pursuant to Title VII are inappropriate because the "[r]elief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995). However, that concern is not present in a Section 1981 case, and courts in this Circuit and others have determined that individual employees may be held liable under Section 1981 in their personal capacities. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (noting that an individual, such as a supervisor, may be personally liable if the individual was personally involved in the discriminatory activity); *Johnson v. Fam. Prac. & Inj. Ctr., Inc.*, 437 F. Supp. 3d 1108, 1118 (M.D. Fla. 2020) (considering whether a doctor could be individually liable under Section 1981 in addition to the medical practice to which he belonged). The Eleventh Circuit appears not to have spoken directly on this issue; nevertheless, this Circuit's law suggests that individual liability

---

[42]   ECF 1, ¶ 2.

exists under Section 1981 as a result of an employee's interference or participation in the alleged discriminatory conduct. *See Faraca v. Clements*, 506 F.2d 956, 959–60 (5th Cir. 1975) (affirming judgment holding director of medical center individually liable under Section 1981);[43] *see also Burstein v. Emtel, Inc.*, 137 F. App'x 205, 208 (11th Cir. 2005) (per curiam) (finding that an individual who did not participate in a decision not to offer an employment contract to the plaintiff-employee was not liable under Section 1981 because he did not participate in the decision). And in any event, if ever there were a case for individual Section 1981 liability, it would be this one.

District Courts in this Circuit considering the question have applied the Tenth Circuit's test to analyze individual liability under Section 1981. *See Johnson*, 437 F. Supp. 3d at 1119 (citing *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991), *overruled on other grounds*, *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.2d 1220, 1228 (10th Cir. 2000)). The test itself is simple: A claim for personal liability under Section 1981 "must be predicated on the actor's personal involvement in the alleged discrimination" upon proof that the actor had

---

[43]   The Eleventh Circuit has adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981. *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

knowledge of the discriminatory acts and failed to remedy or prevent them. *Johnson*, 437 F. Supp. 3d at 1119 (citations omitted). It merely requires "some affirmative link to causally connect the actor with the discriminatory action." *Id.* (cleaned up).

Applying the Tenth Circuit's test here, the record is replete with facts that tie Myers to the discriminatory conduct. Those actions begin and end with him. Thus, Myers is liable in his personal capacity for the harm Marshall suffered. *Cf. Hicks v. IBM*, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999) ("In each of the cases that have allowed individual liability [under § 1981], the individuals have been supervisors who were personally involved in the discriminatory activity."). Therefore, Marshall's motion is granted as to both Defendants' liability on the three Section 1981 theories she pleads.

### 2.   Damages

#### *i.*   Marshall Is Entitled to Punitive Damages.

In addition to the compensatory damages to which Marshall is entitled, she requests punitive damages. For the issue of punitive damages to reach the jury in a Section 1981 case, the plaintiff must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to [her] federally protected rights." *Miller*, 277 F.3d at 1280 (citing *Kolstad v. Am. Dental Ass'n*, 527

U.S. 526, 536–37 (1999)). In this context, "[m]alice means an intent to harm and recklessness means serious disregard for the consequences of one's actions." *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 900 (11th Cir. 2011) (quoting *E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000)). Punitive damages are available only if "the discriminating employee was high up the corporate hierarchy or . . . higher management countenanced or approved his behavior." *Id.* at 900–01 (quoting *Miller*, 277 F.3d at 1280).

Here, the admitted factual allegations overwhelmingly support that Myers—the sole owner and member of Tidal Wave, and therefore the top of Tidal Wave's corporate hierarchy[44]—acted with at least reckless indifference to the consequences of his discriminatory conduct toward Myers. His conduct clearly amounted to a "pattern of discrimination" and "blatant disregard for civil obligations," if not unadulterated "spite or malevolence" in his violent actions toward Marshall on August 4, 2021. *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322–23 (11th Cir. 1999) (citations omitted). Most tellingly, when Marshall threatened to report his behavior to the pertinent government authorities, Myers indicated that he was not worried and kept a lawyer on retainer. Thereafter, he

---

[44]   ECF 7-1, at 22.

continued his flatly abusive conduct.[45] Marshall is entitled to punitive damages against Defendants, and her motion is granted on this point.

### ii. Marshall is Not Entitled to a Jury Trial on Damages but It Will be Allowed at the Court's Discretion.

With the issue of liability resolved soundly in her favor, Marshall requests a jury trial to determine damages, echoing her prayer for the same in the Complaint.[46] Ordinarily, once a demand for a jury trial is made, it can only be withdrawn with the consent of all parties. Fed. R. Civ. P. 38(a)–(b), (d). It is further true that Marshall's damages are not readily calculable or for a sum certain, and that, under such circumstances, "the court may conduct hearings or make referrals—preserving *any federal statutory right to a jury trial*—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages. . . ." Fed. R. Civ. P. 55(b)(1)–(2) (emphasis added). But whether Marshall is *entitled* to a jury trial on damages for her Section 1981 claims here is far from a settled question.

Plaintiff cites opinions from courts in this Circuit for the proposition that a plaintiff is entitled to a jury trial on damages after a default judgment if any party demanded a jury trial and all parties have not consented to withdraw that

---

[45] ECF 1, ¶ 28.

[46] *Id.* at 20.

demand.[47] *See, e.g., Brown v. Ramada Birmingham Airport*, 2018 WL 1609632, at *3 (N.D. Ala. Apr. 3, 2018); *Loos v. Club Paris, LLC*, 684 F. Supp. 2d 1328, 1336 (M.D. Fla. Feb. 5, 2010) (relying, without explanation, on Florida state court caselaw). Other courts in this Circuit have held that there is no federal statutory right to a jury trial on damages after a default judgment, regardless of whether any party demanded a jury trial. *See, e.g., Partay v. Nw. Publ'g, Inc.*, 931 F. Supp. 865, 870 (S.D. Ga. 1996); *Est. of Faull v. McAfee*, 2015 WL 6125309, at *4 (M.D. Fla. Oct. 16, 2015) (disregarding *Loos* for its unpersuasive reliance on Florida state court caselaw).

The Court finds the latter view persuasive and concludes that Marshall is not entitled to a jury trial on damages. Marshall has not identified "any federal statutory right to a jury trial" that attached upon her demand for a jury trial or thereafter. Fed. R. Civ. P. 55(b)(2).[48] Further, while the Federal Rules of Civil Procedure, such as Rules 38 and 55, might have "the force of a federal statute,"

---

[47]  ECF 7-1, at 23.

[48]  Even under a Seventh Amendment theory, the Court concludes that Rule 55(b)(2) does not guarantee a jury trial after default. *Oppenheimer v. Johnson*, 2020 WL 4227472, at *5 (W.D.N.C. July 23, 2020) (collecting cases, ascribing the contrary position as the "minority view," and noting that "the majority approach [that there is no constitutional right to a jury trial upon default] is more consistent with long-standing precedent").

*Sibbach v. Wilson & Co.*, 312 U.S. 1, 13 (1941), they are not in fact federal statutes. They are merely procedural rules, promulgated by the Supreme Court pursuant to the Enabling Act and subject to congressional review, which "shall not abridge, enlarge, or modify any substantive right" under the law. 28 U.S.C. § 2072. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 418 (2010) (Stevens, J., concurring).

The Court nevertheless exercises its discretion and will allow Marshall to proceed with a jury trial if she wishes. However, the Court urges Marshall to reconsider this request in light of the legal framework described herein, as well as the attendant resources required to conduct a jury trial as opposed to a bench trial.

III.    **Conclusion**

Marshall's Motion for Default Judgment [ECF 7] is **GRANTED IN PART and DENIED IN PART**. Within 7 days of the entry of this Order, Marshall is **ORDERED** to notify the Court whether she wishes to amend her Complaint to cure the deficiencies in the Title VII clams as described in this Order. Marshall is further **ORDERED** to confirm to the Court that she wishes to proceed with a jury trial rather than a bench trial on damages. Finally, Marshall is **ORDERED** to notify the Court whether she consents to having the damages trial heard by U.S. Magistrate Judge Larkins rather than undersigned. If Marshall chooses to forego pursuing her Title VII claims, the Court will proceed to schedule a trial concerning damages on the Section 1981 claims for which default judgment as to liability has now been established.

The Clerk is **DIRECTED** to mail a copy of this Order to each Defendant at the address listed on the electronic summonses (ECFs 2, 3). The Clerk is further **DIRECTED** to resubmit this Order to undersigned in 7 days.

**SO ORDERED** this 28th day of December, 2022.

Steven D. Grimberg
United States District Court Judge